## Case No. 5,519.

### GOLDSBOROUGH v. UNITED STATES.

[Taney, 80.] [1]

Circuit Court, D. Maryland. April Term, 1840.

NAVY—ACTING PURSER'S COMMISSION ON DISBURSEMENTS — CHANGE OF COMPENSATION ALLOWED BY STATUTE—CONSTRUCTION OF LAW BY NAVY DEPARTMENT—EFFECT.

1. An acting purser in the navy, holding no other naval office at the time, is not entitled to a commission of 2½ per cent. upon the money disbursed by him for the government.

2. Where an act of congress declares that an officer of the government, or public agent, shall receive a certain compensation for his services, which is specified in the law, that compensation can neither be enlarged nor diminished by any regulation or order of the president, or of a department, unless the power to do so is given by act of congress.

3. The compensation of an acting purser for services rendered in the ordinary line of his official duty, is regulated by the act of April 18, 1814, c. 143 [2 Story's Laws, 1427; 3 Stat. 136, c. 84], which declares that a purser shall receive $40 per month and two rations a day; and as the secretary could not increase this compensation, by enlarging the monthly allowance, or by increasing the number of rations per day, neither can he do it in the shape of commissions, when no such commissions are given by law.

4. There is no distinction in this respect between a purser and an acting purser; the latter being lawfully in the office of purser, and authorized to perform its duties, is entitled to the compensation which the law has provided for such service, and to nothing more.

5. The construction of a law by the navy department, and the practice under it, cannot be allowed to alter the law, nor to control its construction in a court of justice.

6. The exercise of a power not warranted by law, by the head of a department, cannot create such an equity against the United States, as will be recognised and enforced in a court of justice.

7. The act of congress of March 3, 1809, c. 95 [2 Story's Laws, 1122; 2 Stat. 535, c. 28], does not apply to the office of purser.

8. The plaintiff's intestate, as acting purser, had a right, in his transactions with individuals, to the profits and advances authorized by the regulations of the navy department, which regulations were unquestionably consistent with the law creating the office of purser, and warranted by it, and were, therefore, lawfully issued by the secretary, and binding upon the parties concerned.

[In error to the district court of the United States for the district of Maryland.]

This was an action of assumpsit, brought in the district court, by the United States against [William Goldsborough] the administrator of Charles H. Goldsborough, deceased. The amount in dispute was claimed by the defendant, as a proper allowance for commissions, at the rate of 2½ per cent., upon the disbursements made by the deceased, as acting purser, in the years 1835–1836. The deceased was an acting purser, on a foreign station, at the time the disbursements were made, on which the 2½ per cent. commissions were claimed; he had been ap-

pointed by the captain of the ship in which he served, to fill a vacancy, and died without having his appointment confirmed; he held no other naval office than that of acting purser.

At the trial, the defendant offered in evidence the following regulations of the navy department, and the following letters:

Circular. Navy Department, April 1, 1833. Sir: The commissions allowed to consuls, or any foreign agents (now paid by a per-centage), for any business transacted for the navy department, after the first of July next, shall not exceed 2½ per cent. Though the rule formerly was to allow pursers a commission, and especially meant acting ones, it has been discontinued some years in relation to permanent pursers; and after the above period, it is not to be applied even to acting pursers, if they hold any other naval office at the same time. Levi Woodbury.

Allowance to Pursers. "An allowance of commissions of 2½ per cent., upon payments made by pursers, is of ancient date."

Treasury Department, Second Comptroller's Office, Jan'y 19, 1838. Sir: Upon the application of the administrator on the estate of the late Purser Goldsborough, I have attentively considered the question, whether acting pursers are legally entitled to a commission on their disbursements, and I am of opinion, and accordingly decide, that the rule as recognised in the Red Book, chapter 10, Allowance to Pursers, sect. 1, has not been annulled or modified by any law, or subsequent regulation, so far as it relates to such acting pursers as hold no other naval office. I am, sir, respectfully, your obedient servant, Albion K. Parris, Comptroller of the Treasury.

J. C. Pickett, Esq., Fourth Auditor.

Treasury Department, Second Comptroller's Office, Nov. 9, 1838. Sir: In the rules of the navy department, regulating the civil administration of the navy of the United States, published by the secretary of the navy, in March, 1832, is the following (see Red Book, page 18, chapter 10): Allowance to Pursers, sect. 1, "An allowance of commissions of 2½ per cent. upon payments, made by pursers, is of ancient date." Finding this among the rules promulgated for the settlement of navy accounts, I have supposed it was to be taken as a guide by the accounting officers, especially, as in the order by which the regulations were promulgated, it is expressly provided that "circulars, regulations and orders, the contents of which are published in this compilation, though not before published, or not before received, by officers in the naval service, will be considered by them as now officially communicated, and will be their guide on the subject-matter of them, after the receipt of this volume." (See secretary's order on first page, and his letters to the officers of the navy on the second page.) In this opinion, I have been confirmed, by a cir-

[1] [Reported by James Mason Campbell, Esq., and here reprinted by permission.]

cular of the navy department of April 1, 1833, wherein the rule to allow a commission to acting pursers, who hold no other naval office, is expressly recognised under these two regulations. I have decided in favor of the claims of acting pursers to commissions, and I do not perceive how I can decide differently, according to what I conceive to be the legal interpretation of these two regulations. It has been suggested, that my construction does not accord with the views of the navy department. I should much regret if such were the fact, as it is my anxious wish to administer both the law and the regulations according to their just interpretation, and if possible, without doing violence to the obvious meaning of language, so as to carry into effect the intention of the framers. I have thought it due to the department to make known, in this manner, my construction of these regulations, to the end that if, in the opinion of the head of the department from which they emanated, they can legally receive, and ought to receive, a different construction, I may be so advised, or if they have received their true legal construction, and, in the opinion of the head of the department, it is proper that they may be modified or annulled, that such a course may be pursued as shall be deemed most advisable. I am, with entire respect, your obedient servant, Albion K. Parris, Comptroller of the Treasury.

Hon. J. K. Paulding, Secretary of the Navy.

P. S. If there be doubts in the mind of the secretary as to the correctness of my decision, I have to ask that the opinion of the attorney-general may be requested thereon.

Treasury Department, Fourth Auditor's Office, April 9, 1839. Sir: Your letter of the 4th inst. is received, and herewith you have a reconciling statement of the last settlement of the account of the late Acting Purser Charles H. Goldsborough, deceased, showing the items which compose the balance due to the United States from him. In the settlement made the 13th December 1837, at this office, the charge made for commissions on disbursements was passed to the credit of Mr. Goldsborough, but on the revision of the account by the second comptroller of the treasury, that officer refused to admit that credit, and consequently disallowed it. Therefore, you will find the sum $1248 10 charged in the reconcilement now sent, which will explain why the balance due on the account revised the 12th January 1839, is so much more than the amount due, as you supposed, by that reported at this office in December 1837. I am, sir, respectfully, your obedient servant, A. O. Dayton.

Wm. Goldsborough, Esq., Administrator of Charles H. Goldsborough, Late Acting Purser, United States Navy, Easton, Md.

Treasury Department, Fourth Auditor's Office, Sept. 11, 1839. Sir: In reply to that part of the letter, dated the 30th ult., from Nathaniel Williams, attorney of the United States for the district of Maryland, to the solicitor of the treasury, as relates "to the voucher which claimed $154 91 (for Charles H. Goldsborough, late acting purser United States navy), as a clerk on board the Delaware, and which is rejected as an overcharge," which letter you referred to this office yesterday, I have to state, that the claim referred to is on the pay-roll of the ship Delaware, and is for pay and rations from the 23d February 1833, to 12th February 1834, at $25 per month pay, and one ration or twenty-five cents per day. The muster-roll of the Delaware shows that C. H. Goldsborough, captain's clerk, did not appear on board until the 15th July 1833, from which day inclusively he was allowed pay and rations at the rate before mentioned. The amount of $154 91, charged to him, is for his pay and rations from the 22d February to 14th July 1833. The letter of the district attorney to the solicitor, is herewith returned. I am, sir, respectfully, your obedient servant, F. H. Gilliss, Acting Fourth Auditor.

Albion K. Parris, Esq., Second Comptroller of the Treasury.

Treasury Department, Second Comptroller's Office, Sept. 11, 1839. Sir: I send you a copy of my opinion, given upon the application of the administrator on the estate of the late Purser Goldsborough, presented through Purser Waldron, in January 1838. This opinion was given after the settlement of Purser Goldsborough's accounts, in December 1837, and upon the production of the circular of the secretary of the navy of April 1, 1833, the existence of which circular was not known to this office until a copy of it was produced by Purser Waldron, in January 1838. I also send you a copy of letters on the same subject addressed by me to the secretary of the navy, on the 9th of November 1838, to which I have not received any reply, nor am I advised that any action has been had thereon. From these two papers you will perceive my opinion in regard to the legality of the claims of those acting pursers, who hold no other office, to commissions, under the regulations referred to in my letter to the secretary. I am gratified that the subject is now before the judiciary, and have to request that it may there be fully examined, without any regard to my opinion, so that the question may hereafter be considered wholly at rest. I also send you a letter of this date, from the fourth auditor, relating to the disallowance of $154 91, referred to in your letter to the solicitor of the treasury. I am, sir, very respectfully, your obed't servant, Albion K. Parris, Comptroller of the Treasury.

Nathaniel Williams, Esq., U. S. District Attorney, Baltimore.

P. S. I find, on examining the records, that the $1248 10 was disallowed by the comptroller in the account settled December 1837, and that the account settled January 1839, was admitted, as stated by the auditor, without alteration. I make these remarks in explanation of my letter of yesterday, which was written in haste, without opportunity of reference to records. A. K. P.

The defendant moved the court to instruct the jury that if they should find from the evidence that Charles Goldsborough, the defendant's intestate, was an acting purser on a foreign station, in the employment of the United States, at the time the disbursements mentioned in the said account were made, and that he died before his appointment of purser was confirmed, and that he held no other naval office than that of acting purser, that he was entitled to charge 2½ per cent. commission on the said disbursements. The district court refused to give this instruction, but instructed the jury [case unreported], that the defendant's intestate was entitled to one per cent. on the amount of disbursements made by him in the service and on the station mentioned. To this instruction exception was taken by the defendant, and the case was brought into the circuit court.

R. N. Martin, for plaintiff in error.

N. Williams, Dist. Atty., for the United States.

TANEY, Circuit Justice. This cause is brought here by writ of error from the district court. The point to be determined is, whether an acting purser in the navy, who held no other naval office at the time, is entitled to 2½ per cent. commission, upon the money disbursed by him for the government. It is admitted, that this allowance is not given by any act of congress. It is claimed under a regulation of the navy department; it is, in express and positive terms, allowed in a regulation issued by the secretary of the navy in 1832; and this regulation is repeated, so far as concerns acting pursers holding no other naval office, in a circular instruction from the navy department, dated April 1, 1833. The services in question were performed in 1835–1836, and no regulation or order has ever been issued from the navy department revoking the allowance before mentioned; if, therefore, the department had the power to make these regulations, it is very clear that the plaintiff in error is entitled to the allowance he claims.

There are, certainly, cases in which the compensation to a person employed in a public service may be determined by the president or the head of a department; several cases of this description are mentioned in the opinions of the supreme court, in the cases of U. S. v. Macdaniel [7 Pet. (32 U. S.) 1], U. S. v. Ripley [Id. 18], and U. S. v. Fillebrown [Id. 28], which have been re-ferred to in the argument. In some instances, the power is expressly given by act of congress, as for example, in the act of March 3, 1809, c. 95 [2 Stat. 535, c. 28], and in the act of April 18, 1814, c. 143 [3 Stat. 136, c. 84], both of which have been cited in this discussion. But where an act of congress declares that an officer of the government or public agent, shall receive a certain compensation for his services, which is specified in the law, undoubtedly, that compensation can neither be enlarged nor diminished, by any regulation or order of the president, or of a department, unless the power to do so is given by act of congress.

In the case before me, the commission is claimed as a part of the compensation, to which the deceased was entitled as acting purser, for services rendered in the ordinary line of his official duty. Now the compensation to a purser for services of that description, is fixed by the act of congress of April 18, 1814, c. 143 [3 Stat. 136, c. 84], which declares that a purser shall receive $40 per month, and two rations a day; it is the same compensation which was given by the acts of March 27, 1794, c. 12, § 6 [1 Stat. 351], and July 1, 1797, c. 7 [1 Stat. 524]. And when the law declares that, for certain services, he shall receive $40 per month and two rations per day, by what authority can the head of a department allow him more? The same act of congress, and the same section, that fixes the compensation of a purser, fixes also the compensation of lieutenants, chaplains, sailing masters, surgeons and various other officers in the navy, by giving them a certain sum per month, and a certain number of rations per day. It never has been supposed, that the secretary of the navy was authorized to increase the compensation of these officers, by enlarging their monthly allowance, or adding to the number of their daily rations; and when the compensation to the purser is fixed by the same law, and in language precisely the same, how can his case be distinguished from that of the other officers named in the law? How can the secretary increase his compensation by enlarging his monthly allowance, or adding to the number of his daily rations? And if he cannot do it in this mode, by what authority, or upon what distinctions, can he do it, in the shape of commissions, when no such commissions are given by law? The court can see no ground whatever for distinguishing the case of a purser from that of any other officer mentioned in the act of congress; and as the department is bound by the allowance fixed for them, it is equally bound by that fixed for a purser.

Indeed, the objection to the allowance is made still stronger, by the provisions of the second section of the act of 1814, which authorize the president to make an addition, not exceeding twenty-five per cent. to the pay of the officers, petty officers, midshipmen, seamen and marines engaged in any

service, the hardships or disadvantages of which shall, in his judgment, render such an addition necessary. The power given to make this addition, by necessary implication, excludes the power of making any other or greater addition, or under any other circumstances, than those mentioned in this section; and if such a power could have been supposed to exist, in cases where the law merely fixes the compensation, and says nothing further, yet the well-established rules for the construction of statutes, would exclude it in the present case.

It has, however, been argued, that a purser is neither a commissioned officer nor a warrant officer, and is not so regarded in the navy, and that, therefore, the provisions in the second section of the act of 1814, do not apply to him. In other words, it is insisted, that the purser does not come within the description of an "officer," and, consequently, is not included in the number of persons to whom the president is authorized to make the limited increase of compensation specified in the section.

It would be a sufficient answer to this argument to say, that the compensation of the purser is, undoubtedly, specified in the law, and he is, therefore, within the general principle before stated. But the second section applies to the allowance claimed in this suit, with as much force as it would to the increase of the pay and emoluments of any other officer mentioned in the first section; for, whether a purser is regarded in the navy as a commissioned officer, or a warrant officer, or neither, it is very certain, that he is alv~ys included under the description of an "officer," in the acts of congress which fix his compensation. Thus, in the act of March 27, 1794, c. 12, the sixth section declares, "that the pay and subsistence of the respective commissioned and warrant officers, be as follows;" it then proceeds to specify their compensation, from the captain down, and the purser is mentioned among them.

The same language is used in the act of July 1, 1797, c. 7, § 5, and again in the act of 1814 itself, showing clearly that the purser is embraced in the law, under the description of an "officer," and consequently, that the restricted power given to the president, to increase the pay of an officer to a certain extent, under certain circumstances, applies to him as well as to the other officers named in the law, and therefore, carries with it the implied prohibition already mentioned, in his case, as well as in that of other officers. It is, by necessary implication, an implied prohibition to the executive, to add anything to the purser's compensation, greater than the amount specified, or under different circumstances, from those mentioned in the law.

It has been urged, that Mr. Goldsborough was an acting purser only, appointed by the commander of the ship, when abroad, to sup-

ply the place of the regular purser, who died when the ship was in a foreign port, and that the case of an acting purser is not provided for by any act of congress, nor his compensation fixed. The regulation of the navy department of April 1, 1833, hereinbefore mentioned, would seem to countenance this distinction; but it can have no solid foundation. By the established usage and practice of the navy, sanctioned by the inferences which may justly be drawn from the legislation of congress upon this subject, the commanding officer may appoint a purser to his ship, when the purser regularly appointed dies while the ship is abroad. The party thus appointed is lawfully in office, and authorized to perform the duties which belong to it, until the ship returns to this country, unless he is superseded by the appointment of some other person. Being lawfully in the office, and authorized to perform its duties, he is entitled to the compensation which the law has provided for such service, and to nothing more. This is the case of all appointments ad interim to offices on shore; and there is no reason why there should be a different rule in relation to the navy, nor a special rule in relation to a purser; the acting purser is nothing more than a purser ad interim, holding the office by an appointment which is temporary in its nature, and intended only to last until the office is regularly filled by a permanent appointment, made by the president.

If it should be said, that the commanding officer of the ship had no lawful authority to make an appointment ad interim, and that Mr. Goldsborough, therefore, was never regularly and lawfully in the office of purser, it would not strengthen the claim of the plaintiff in error to the allowance in question; for if he was not regularly in office, and rendered public service without any lawful authority to do so, then he must look to congress for remuneration, and not to the department.

It is true, that at the time these services were performed, the navy department claimed the right to make this allowance; this is abundantly proved by the regulations of 1832 and 1833, hereinbefore referred to; and at the time the appointment in question was accepted, and the services performed, Mr. Goldsborough, undoubtedly, supposed that he was entitled to the commission now claimed, in addition to the compensation mentioned in the act of congress. But the mistake of the secretary of the navy, or of the party interested, cannot alter the law upon the subject.

The construction given to the act of congress by the navy department; and the long and uninterrupted practice conforming to that construction, must certainly be considered and respected by the court; yet, the construction of the navy department, and the practice under it, cannot be allowed to alter the law, nor to control its construction

in a court of justice. But in this case it is not suggested, that there is any act of congress which can be construed to sanction this allowance of 2½ per cent.; and the power is claimed under the authority of usage, independently of any legislation upon the subject. Now, a usage, which would authorize the secretary of the navy to allow this commission, would, in effect, be a power not to expound, but to repeal the act of congress; for it would allow him to dispose of the public money in opposition to the true construction and meaning of the act, by giving the officer a higher salary than the law authorized; no usage or practice can warrant such a principle. As the case now stands, it is the duty of the court to expound the law, and to disallow the credit in question, unless Mr. Goldsborough is lawfully entitled to it; and in performing this duty the court can recognise no right which is in opposition to the true construction of the act of congress; if the mistake of the department, and the expectations and belief of Mr. Goldsborough as to the extent of his compensation, at the time he accepted the office, furnish any equitable grounds for the allowance of this commission, it is an equity, upon the sufficiency of which congress must judge, and not the court. The exercise of a power, not warranted by law, by the head of a department, cannot create such an equity against the United States, as will be recognised and enforced in a court of justice.

The act of congress of March 3, 1809, c. 95 [2 Stat. c. 28], is supposed, by the district attorney, to bear upon this subject, and its construction has been much discussed in the argument of the case. The district court was of opinion that the office of purser was embraced in the provisions of this law, and that Mr. Goldsborough, under it, was entitled to a commission of one per cent. upon the payments made by him for the United States, and he received that credit in the judgment pronounced by the district court; but after a very careful examination of that law, I am satisfied that it does not apply to the office of purser, and on this point I must differ from the court below. Entertaining this opinion, it is unnecessary to speak of the construction of the act of congress in relation to the cases embraced by it.

In my judgment, Mr. Goldsborough, while he acted as purser, was not entitled to any per-centage upon the money disbursed for the government; his compensation from the public was $40 per month and two rations per day, and nothing more; but in addition to this, he had a right, in his transactions with individuals, to the profits and advances authorized by the regulations of the navy department. These last-mentioned regulations are, unquestionably, consistent with the law creating the office of purser, and warranted by it, and were, therefore, lawfully issued by the secretary, and are binding upon the parties concerned.

In this view of the subject, the plaintiff in error has obtained in the district court a credit of one per cent. on his disbursements for the public, to which he is not entitled; but the United States acquiesced in the decree, and no writ of error has been brought on their part. The judgment of the district court must, therefore, be affirmed.